**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DOMINION ENERGY TRANSMISSION, INC.,**

        **Plaintiff,**

**v.**               **//    CIVIL ACTION NO. 1:18CV26
                          (Judge Keeley)**

**3.71 ACRES OF LAND, MORE OR LESS, IN
DODDRIDGE COUNTY, WEST VIRGINIA, ET AL.,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

    The plaintiff, Dominion Energy Transmission, Inc. ("DETI"),
seeks to condemn certain temporary and permanent easements
necessary for the construction and operation of a natural-gas
pipeline that runs through West Virginia. To facilitate expeditious
completion of its project, DETI seeks partial summary judgment
regarding its right to condemn the easements, and a preliminary
injunction allowing it to access and possess the property prior to
paying just compensation. After carefully considering the record
and the evidence adduced at a hearing on February 22, 2018, for the
following reasons, the Court **GRANTS** DETI's Motion for Partial
Summary Judgment (Dkt. No. 3) and Motion for Immediate Possession
of the Easements (Dkt. No. 4).

## I. LEGAL FRAMEWORK

    This proceeding is governed by the Natural Gas Act ("NGA" or
"the Act"), which provides private natural-gas companies the power

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

to acquire property by eminent domain. 15 U.S.C. § 717 <u>et seq.</u>

Under the Act, a "natural-gas company" is "a person engaged in the

transportation of natural gas in interstate commerce, or the sale

in interstate commerce of such gas for resale." <u>Id.</u> § 717a(6). Such

companies may build and operate new pipelines only after obtaining

a certificate of public convenience and necessity ("Certificate")

from the Federal Energy Regulatory Commission ("FERC" or "the

Commission"). As the Fourth Circuit has summarized:

> The procedure for obtaining a certificate from FERC is
> set forth in the NGA, and its implementing regulations.
> The process begins with an application from the gas
> company that includes, among other information, (1) a
> description of the proposed pipeline project, (2) a
> statement of the facts showing why the project is
> required, and (3) the estimated beginning and completion
> date for the project. Notice of the application is filed
> in the Federal Register, public comment and protest is
> allowed, and FERC conducts a public hearing on the
> application. As part of its evaluation, FERC must also
> investigate the environmental consequences of the
> proposed project and issue an environmental impact
> statement. At the end of the process FERC issues a
> certificate if it finds that the proposed project "is or
> will be required by the present or future public
> convenience and necessity." In its order issuing a
> certificate, FERC specifies a date for the completion of
> construction and the start of service. The certificate
> may include any terms and conditions that FERC deems
> "required by the public convenience and necessity."

<u>E. Tenn. Nat. Gas Co. v. Sage</u>, 361 F.3d 808, 818 (4th Cir. 2004)

(internal citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND**
**MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

"Once FERC has issued a certificate, the NGA empowers the certificate holder to exercise 'the right of eminent domain' over any lands needed for the project." Id. (citing 15 U.S.C. § 717f(h)). The authority by which natural-gas companies may exercise the right is set forth fully in the Act:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h). Notably, the "state procedure requirement has been superseded" by the implementation of Fed. R. Civ. P. 71.1, which provides the applicable procedure in most condemnation cases. See Sage, 361 F.3d at 822.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

There are, thus, three essential prerequisites that must be met prior to any exercise of the power of eminent domain under the NGA. The natural-gas company must only establish that "(a) It is a holder of a certificate of public convenience and necessity; (b) It needs to acquire an easement, right-of-way, land or other property necessary to the operation of its pipeline system; and (c) It has been unable to acquire the necessary property interest from the owner." Rover Pipeline LLC v. Rover Tract No(s) WV-DO-SHB-011.510-ROW-T & WV-DO-SHB-013.000-ROW-T, No. 1:17cv18, 2017 WL 5589163, at *2 (N.D.W.Va. Mar. 7, 2017).

Further, the law in the Fourth Circuit is clear that, "once a district court determines that a gas company has the substantive right to condemn property under the NGA, the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction." Sage, 361 F.3d at 828. A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4]

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).[1]

## II. BACKGROUND

On October 13, 2017, FERC granted a Certificate to DETI authorizing construction of 37.5 miles of natural-gas pipeline in West Virginia ("the Project") (Dkt. No. 1-2 at 7).[2] The Project also includes the construction of four compressor units, six valve sites, and two sets of pig launcher and receiver sites. Id. DETI must obtain easements along the Project in order to construct its pipeline, and under the appropriate circumstances the NGA grants it the authority to do so by eminent domain.

On February 5, 2018, DETI sought to exercise that authority over certain property located in the Northern District of West

---

[1] Because the Court refers to the facts and analysis in Sage throughout this Opinion and Order, it bears noting that Sage applied the preliminary injunction test from Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc., 550 F.2d 189, 193-96 (4th Cir. 1977), which was abrogated by the Supreme Court's holding in Winter. Real Truth About Obama, Inc. v. Fed. Election Com'n, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds and remanded, 559 U.S. 1089 (2010), standard reaffirmed in 607 F.3d 355 (4th Cir. 2010). Nonetheless, Sage is binding on this Court to the extent that its analysis of each preliminary injunction factor comports with the requirements of Winter.

[2] Citations to the FERC Certificate reference pagination of the FERC Certificate itself rather than CM/ECF pagination.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

Virginia, which it was unable to acquire by agreement, by filing a complaint pursuant to the NGA and Fed. R. Civ. P. 71.1 (Dkt. No. 1). As required by Rule 71.1(c)(2), DETI included a description of the property, as well as the interests to be taken (Dkt. Nos. 1 at 6-9; 1-4). On February 6, 2018, DETI moved for partial summary judgment on its right to condemn the subject property, and sought a preliminary injunction allowing it to possess immediately the easements sought (Dkt. Nos. 3; 4). DETI also moved to expedite a hearing on its motions so that it can "complet[e] necessary pre-construction and construction activities" (Dkt. No. 5). To date, no defendant has appeared in the case or filed an answer pursuant to Fed. R. Civ. P. 71.1(e)(2).

On February 22, 2018, the Court conducted an evidentiary hearing at which, despite having been provided notice, no defendant appeared. DETI presented the testimony of Matthew Sickles ("Sickles"), Supervisor of Engineering for the Project; Jamie Burton ("Burton"), a Senior Land Agent for the Project; and Wesley Woods, a real estate appraiser retained for the Project. At the close of the hearing, the Court directed DETI to provide further information regarding efforts taken to identify existing mineral interests that may be affected by the Project.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

On February 28, 2018, DETI filed the Declaration of Jamie Burton, who declared that DETI had identified and provided notice to third-party interest holders, that there are no active coal mines near the Project, and that DETI "is negotiating mutually acceptable agreements necessary to preserve the integrity of" surface and near-surface facilities identified during surveying. (Dkt. No. 40). Burton further declared that, while the property at issue contains four existing pipelines, the shallow trenching to be utilized in constructing the Project will not affect oil and gas interests, and DETI will "either avoid these facilities or take appropriate measures to protect the[ir] integrity." Id. at 2-3.

### III. MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs.,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

The Court may only exercise its equitable power to grant a preliminary injunction after determining "that a gas company has the substantive right to condemn property under the NGA." Mid Atlantic Express, LLC v. Baltimore Cty., Md., 410 F. App'x 653, 657 (4th Cir. 2011) (unpublished decision) (quoting Sage, 361 F.3d at

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

828). As discussed, to establish that it has the right to condemn, DETI must demonstrate only that 1) it holds a FERC Certificate, 2) it needs to acquire the easements, and 3) it has been unable to acquire them by agreement. 15 U.S.C. § 717f(h). DETI has satisfied each of these elements, and is entitled to partial summary judgment regarding its right to condemn.

First, the parties cannot dispute that FERC issued a Certificate to DETI on October 13, 2017 (Dkt. No. 1-2). Second, DETI has established that the easements are "necessary and consistent with the easement rights that FERC authorized [DETI] to obtain." Rover Pipeline LLC, No. 1:17cv18, 2017 WL 5589163, at *2. The uncontested evidence in this case demonstrates that the "[e]asements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing" the Project (Dkt. No. 3-3 at 2). Indeed, Sickles testified that the easements sought in this case are along the route approved by FERC.

Finally, although DETI has engaged in negotiations with all affected landowners, it has been unable to reach an agreement with the defendants in this case. DETI made written offers to acquire the necessary easements in November 2017, but the defendants rejected those offers and claim that the value of the easements

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

exceeds $3,000. Id. at 4. The Court thus concludes that DETI has been unable to acquire the easements by contract or agreement. Therefore, because DETI has satisfied the three requirements of 15 U.S.C. § 717f(h), the Court confirms DETI's right to condemn the easements described in the complaint and **GRANTS** its motion for partial summary judgment (Dkt. No. 3).

## IV. MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS

Given its authority to condemn the subject easements, DETI seeks a preliminary injunction permitting it to access and possess the easements prior to paying just compensation (Dkt. No. 4). A preliminary injunction is proper when the plaintiff can "[1] establish that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter, 555 U.S. at 20. "[A]ll four requirements must be satisfied," Real Truth About Obama, Inc., 575 F.3d at 346, and "[a] preliminary injunction shall be granted only if the moving party clearly establishes entitlement." Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]

The Court is mindful that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter</u>, 555 U.S. at 24. Moreover, "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." <u>Sage</u>, 361 F.3d at 828 (quoting <u>Wetzel v. Edwards</u>, 635 F.2d 283, 286 (4th Cir. 1980)). Having given heightened scrutiny to DETI's request for a mandatory preliminary injunction in light of the factors outlined in <u>Winter</u>, the Court concludes that the exigencies warrant such relief.

**A.    DETI is likely to succeed on the merits.**

For the reasons previously discussed, DETI has satisfied the requirements of 15 U.S.C. § 717f(h) and is authorized to condemn the easements at issue. It has succeeded on the merits, and thus has satisfied the first factor. <u>See Sage</u>, 361 F.3d at 829-30.

**B.    DETI is likely to suffer irreparable harm.**

DETI must next establish that it will be irreparably harmed in the absence of an injunction. <u>Winter</u>, 555 U.S. at 20. Its harm must be likely rather than merely possible. <u>Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.</u>, 700 F. App'x 251, 263 (4th Cir. 2017) (unpublished decision) (citing <u>Winter</u>, 555 U.S. at 22)).

11

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

After carefully reviewing the record, the Court concludes that DETI will suffer irreparable harm.

DETI first avers that it "cannot meet the [FERC] construction deadline without immediate possession of [the] easements" (Dkt. No. 4-2 at 3). It is well established that the likelihood that a natural-gas company will be unable to comply with a FERC deadline constitutes irreparable harm. See, e.g., Sage, 361 F.3d at 829 (finding irreparable harm where "[i]t would not be possible to meet FERC's deadline without a preliminary injunction"); Rover Pipeline LLC, No. 1:17cv18, 2017 WL 5589163, at *4 (finding irreparable harm where the inability to access certain easements would prevent the natural-gas company from meeting the target in-service date contained within its Certificate).

Moreover, under these circumstances, DETI's anticipated economic losses constitute irreparable harm. Typically, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." Di Biase, 872 F.3d at 230 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)). However, this maxim is tied to "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date." Id. In other words, "[w]hile it

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

is beyond dispute that economic losses generally do not constitute irreparable harm, this general rule rests on the assumption that economic losses are recoverable." N.C. Growers' Ass'n, Inc. v. Solis, 644 F. Supp. 2d 664, 671 (M.D.N.C. 2009).

A plaintiff may "overcome the presumption" against a preliminary injunction regarding wholly economic harm, Di Biase, 872 F.3d at 230 (citing Hughes Network Syss., Inc. v. InterDigital Commc'ns Corp., 17 F.3d 691, 694 (4th Cir. 1994)), in the "extraordinary circumstances . . . when monetary damages are unavailable or unquantifiable." Handsome Brook, 700 F. App'x at 263 (citing Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551-52 (4th Cir. 1994)). It is beyond dispute that, if DETI suffers financial losses as the result of its inability to access the condemned easements, it will not be able to recover those losses in this or any other litigation. This weighs in favor of finding irreparable harm. See In re Transcon. Gas Pipeline Co., LLC, 1:16cv02991, 2016 WL 8861714, at *8 (N.D. Ga. Nov. 10, 2016).

Treating economic harm as irreparable under the facts of this case is also consistent with the Fourth Circuit's holding in Sage,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

which considered several species of irreparable harm, including

economic repercussions:

> The district court found that without a preliminary
> injunction the Patriot Project would suffer "undue delay"
> and that this delay would cause "significant financial
> harm both to ETNG and some of its putative customers."
> This finding has ample support in the record. . . .
> Constructing a ninety-four-mile pipeline is a complex
> project that can only progress in phases. Certain
> portions of the project have to be completed before
> construction can begin on other portions. Therefore, as
> the district court recognized, "any single parcel has the
> potential of holding up the entire project." . . .
> Furthermore, ETNG is under an order from FERC to complete
> construction and have the pipeline in operation by
> January 1, 2005. It would not be possible to meet FERC's
> deadline without a preliminary injunction.
>
> ETNG is also under contractual obligation to provide
> natural gas to several electric generation plants and
> local gas utilities by certain dates. Without a
> preliminary injunction, ETNG would be forced to breach
> these contracts. ETNG's inability to satisfy these
> commitments would have negative impacts on its customers
> and the consumers they serve. . . . ETNG estimates that
> it would lose in excess of $5 million if construction
> delay caused it to breach its contractual obligations to
> supply gas. Finally, delay in the construction of the
> pipeline would hinder economic development efforts in
> several Virginia counties.

Sage, 361 F.3d at 828-29 (internal citation omitted); see also

Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less, 768

F.3d 300, 316 (3d Cir. 2014) (holding that financial harm, along

with "safety and potential liability concerns," constituted

irreparable harm).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

Here, the FERC Certificate requires DETI to complete its Project by October 13, 2020 (Dkt. No. 1-2 at 129), but DETI plans to begin construction immediately and place the pipeline in service by November 2019. When DETI commences construction, the Project will proceed in the "linear" fashion that is standard in the industry (Dkt. No. 4-2 at 3). According to Sickles, if DETI is forced to break from this method of construction to avoid a parcel to which it does not have access, DETI will be required to pay its contractors an additional $500,000. DETI's construction schedule hinges on the fact that, in order to comply with regulations of the United States Fish and Wildlife Service that protect migratory birds, certain tree clearing must be complete by March 31, 2018. Id. at 4.

Sickles further testified that, if DETI does not complete the necessary tree clearing by that time, it will be unable to do so until at least November 15, 2018, thus delaying completion of the entire Project by eight months. DETI claims that delaying the entire Project until that time will prevent its primary shipper from meeting the needs of its customers (Dkt. No. 4-1 at 7). Such a delay also would jeopardize DETI's construction contracts and allow its contractors to issue change orders. Additionally,

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

constructing the pipeline during the winter months would have a "disruptive effect" and may lead to further delays (Dkt. No. 4-2 at 4). Taking all of these factors into consideration, Sickles predicted that the inability to begin construction in April would affect DETI's ability to meet FERC deadlines for the Project.

Indeed, given the likelihood of trials on just compensation, this litigation may not be complete sufficiently in advance of the FERC deadline. In light of the fact that the FERC Certificate requires DETI to complete the Project by October 2020, DETI's construction should proceed no later than the time the tree-clearing window closes in March 2020. The prospect that this litigation could be complete in that time, thereby rendering equitable relief entirely unnecessary, is "unfounded" and "fanciful." Columbia Gas Transmission, LLC v. 252.071 Acres More or Less, No. ELH-15-3462, 2016 WL 1248670, at *15 (D. Md. Mar. 25, 2016).

Currently, there six NGA condemnation actions that involve hundreds of defendants pending before the Court. Some defendants and parcels may be joined for trial on just compensation, and others may reach agreements, but if DETI must entirely forego equitable relief "[i]t is not at all likely that this Court could

accommodate, in the requisite time, the need for multiple trials,

given the Court's busy docket." Id. Even if the Court's other

obligations were less pressing, it is possible that "some or all of

the Landowners may appeal the outcome of the trials, which could

add to the delay." Id. (pointing to case that remained pending on

appeal more than two years after its original filing). Therefore,

DETI has established that it will be irreparably harmed in the

absence of a preliminary injunction.

**C.   The balance of equities tips in DETI's favor, and an
      injunction is in the public interest.**

The third and fourth elements of the preliminary injunction

test require DETI to establish clearly that the balance of equities

tips in its favor and that an injunction also is in the public

interest. Winter, 555 U.S. at 20. In cases involving significant

public interest, courts may "consider the balance of the equities

and the public interest factors together." As the Fourth Circuit

has explained:

> Even if Plaintiffs are likely to suffer irreparable harm
> in the absence of a preliminary injunction, we still must
> determine that the balance of the equities tips in their
> favor, "pay[ing] particular regard for the public
> consequences in employing the extraordinary remedy of
> injunction." Weinberger v. Romero-Barcelo, 456 U.S. 305,
> 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). This is
> because "courts of equity may go to greater lengths to
> give 'relief in furtherance of the public interest than

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

> they are accustomed to go when only private interests are involved.'" E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 826 (4th Cir. 2004) (quoting Virginian Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789 (1937)).

Int'l Refugee Assistance Project v. Trump, 857 F.3d 554, 602 (4th Cir. 2017).

Particularly in light of the significant public interest at issue, the irreparable harm DETI likely will suffer outweighs the effect of an injunction on the defendants. Completion of the Project will have the same impact on the defendants' property whether DETI is granted immediate access or commences construction only after landowners have received just compensation (Dkt. No. 4-2 at 5). The fact that an injunction will deprive the defendants of their land now rather than later is not "a type of an inherent harm that is irreparable," but rather an ordinary burden of citizenship. Sage, 361 F.3d at 829. At bottom, it is the NGA and the FERC Certificate that are responsible for any injuries to the defendants, and delaying access until just compensation is paid will do nothing to alleviate those burdens. See id. ("This is simply a timing argument . . . ."); Columbia Gas, 768 F.3d at 316 ("The Landowners have not stated any concrete injury other than the loss of the easements over their land . . . .").

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

There simply is no reason to depart from the Fourth Circuit's reasoning in <u>Sage</u>:

> Congress passed the Natural Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices. As the district court observed, FERC conducted a careful analysis of the . . . [p]roject and determined that the project will promote these congressional goals and serve the public interest. The project serves the public interest because, among other things, it will bring natural gas to portions of southwest Virginia for the first time. This will make gas available to consumers, and it will help in the efforts of local communities to attract much-needed new business. On a larger scale, the pipeline will make gas available for electric power generation plants. A delay in construction would postpone these benefits.

<u>Sage</u>, 361 F.3d at 830 (internal citation omitted).[3]

Here, according to DETI, "[n]atural gas transported by the [Project] will serve multiple public utilities and is necessary to satisfy the growing energy needs of residents and businesses in North Carolina and Virginia" (Dkt. No. 4-2 at 2). FERC concluded that "the public convenience and necessity" required approval of the Project, and that the "benefits that the [Project] will provide

---

[3] Of course, the Court is cautious in applying the reasoning in <u>Sage</u> regarding public interest. The Fourth Circuit's former reasoning <u>Blackwelder</u> did not require courts to consider public interest "at length," while <u>Winter</u> requires that courts "pay particular regard for the public consequences." <u>Real Truth About Obama, Inc.</u>, 575 F.3d at 347. In this case, however, the "public consequences" all weigh in favor of an injunction.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and landowners and surrounding communities" (Dkt. No. 1-2 at 32).

The Court will not second-guess FERC's determination that DETI's project will benefit the public need for natural gas; FERC possesses the expertise necessary to make that determination. There can be no dispute that delaying DETI's completion of the Project will delay the introduction of the benefits identified by FERC. Moreover, according to Sickles, expediting construction will hasten the creation of approximately 800 temporary jobs.

In summary, the Court has carefully considered each of the four factors articulated in <u>Winter</u>, and has given them heightened scrutiny in light of DETI's request for a mandatory preliminary injunction. DETI has carried its burden to clearly establish that it will be irreparably harmed in the absence of a preliminary injunction, that the harm to the defendants does not outweigh DETI's harm, and that granting immediate access is in the public interest. Therefore, the Court **GRANTS** DETI's motion for immediate access and possession of the easements at issue.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

### V. CASH DEPOSIT AND BOND

Having determined that immediate access is appropriate in this case, the Court must further determine the conditions under which such access should be granted. As an initial matter, the Court is satisfied that DETI is capable of providing "reasonable, certain, and adequate provision" that the defendants will obtain compensation prior to having their occupancy disturbed. Sage, 361 F.3d at 824 (citing Cherokee Nation v. S. Kan. Ry. Co., 135 U.S. 641 (1890)). DETI has repeatedly expressed a willingness to deposit money with the Court and to obtain a bond pursuant to Fed. R. Civ. P. 65(c) (Dkt. No. 4-2 at 5). Therefore, upon consideration of these facts, the Court finds that DETI may immediately access and possess the relevant easements after the following conditions have been satisfied:

1)  Effective upon entry of this Memorandum Opinion and Order and satisfaction of the conditions discussed below, DETI is granted immediate possession of the easements described in its complaint, consistent with the FERC Certificate.

2)  Pursuant to the Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(l), the right to immediate possession of the easements on these properties is contingent upon DETI

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

satisfying two requirements as to security. First, pursuant to the provisions of Fed. R. Civ. P. 71.1(j), DETI must deposit with the Clerk of Court ("Clerk") a certified check in an amount of three times the appraised amount for each of the easements sought.[4]

**3)** Second, DETI shall obtain and post a surety bond in the total amount of two times the appraised amount for the easements sought. The bond shall be conditioned on DETI's payment of any and all final compensation damages awarded in excess of the deposited amount, and if such payments are made, then the bond shall be null and void upon full payment having been made as to all of the properties.

**4)** The total value is designed to serve as sufficient security to protect the interests of the landowners in the event any just compensation awarded for one or more of the easements exceeds the appraised amount for such property or properties. The multiplied value, the bond amount, or the two combined, shall not be construed as any indication of the floor or ceiling of

_____

[4] For easements that DETI has appraised as worth $3,000 or less, DETI shall nonetheless base the deposit and bond on a presumed value of $3,001. 15 U.S.C. § 717f(h) (granting jurisdiction over actions where the "amount claimed by the owner of the property to be condemned exceeds $3,000").

the ultimate amount of just compensation, if any, to which any interest-holder is entitled. Instead, the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as the amount DETI is required to provide as security.

**5)** DETI shall remit the deposit amounts to the Clerk for deposit into the registry of this Court. The Clerk shall deposit the amounts received into the registry of this Court and then, as soon as the business of the Clerk's office allows, the Clerk shall deposit these funds into the interest-bearing Court Registry Investment System administered by the Administrative Office of the United States Courts as Custodian, pursuant to Fed. R. Civ. P. 67.

**6)** At the time it remits any deposit or deposit(s), DETI shall also file a chart broken down by easement that identifies: (i) each appraised property for which funds are being deposited; (ii) the corresponding DETI parcel numbers; (iii) the corresponding paragraph numbers in the complaint; (iv) the amount of the deposit for that specific property (which will be three times the appraised amount); (vi) the amount of the bond that relates to that specific property (which will be two

times the appraised amount); and (vii) all persons or entities

who own an interest in the property and the percentage of each

person's interest. The information shall also be emailed to

the Court in an Excel spreadsheet format. If any party

disputes the accuracy of any information in the chart, he

shall file an objection not later than seven (7) days after

service of the chart. Additionally, all parties - including

DETI and any defendants who have an interest in any of the

deposited funds - have a continuing duty, until the conclusion

of all proceedings, to advise the Court if the information in

any filed chart changes. This includes, in particular, a duty

to advise the Court if there is any change for any parcel in

the number of owners or the percentages of their ownership

interests.

7)  Pursuant to Fed. R. Civ. P. 71.1(j)(2), the deposit of any

funds for an identified defendant's property shall constitute

DETI's agreement that the interest-holder can access up to the

base amount of the appraisal or one-third of the deposited

amount, whichever is greater. Such withdrawal is at the

landowner's peril, and all defendants are advised that, if the

ultimate compensation award is less than the amount withdrawn,

the interest-holder will be liable for the return of the excess with appropriate interest. If multiple defendants claim an interest in any of the easements, each defendant claiming an interest can withdraw only its proportionate share of the funds identified for that easement and attributable to its claimed interest.

8) Each of the defendants shall be entitled to draw from one-third of the funds deposited by DETI with the Clerk its ownership share of the amount of estimated just compensation deposited by DETI for the easement which burdens lands in which such defendant owns or claims an interest, subject to the warnings above, and provided that each such defendant satisfies all conditions of this Memorandum Opinion and Order and any other directive of the Court. Furthermore, such defendants shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Memorandum Opinion and Order on the difference between the principal amount deposited with the Court by DETI and the amount of just compensation determined by the Court, if any, if such determination of just compensation to be paid exceeds the amount deposited by DETI.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

**9)**  A defendant who wishes to draw on the deposited funds shall file a motion for disbursement of funds with the Court and shall include a certificate of service evidencing service of the motion on all other persons with a property interest in the same parcel or easement, if any. Any person objecting to the disbursement shall have fourteen (14) days to file a written objection with the court. The Court will then resolve any objections and issue an order on the withdrawal request. If there are no other persons with an interest in the property, disbursement will be permitted only by a separate order of the Court, but the period for objections will not apply.

## VI. CONCLUSION

In conclusion, for the reasons discussed, the Court:

**1)**  **GRANTS** DETI's Motion for Partial Summary Judgment (Dkt. No. 3);

**2)**  **GRANTS** DETI's Motion for Immediate Possession of the Easements (Dkt. No. 4); and

**3)**  **DIRECTS** DETI to deposit funds and a surety bond prior to accessing and taking possession of the property as set forth above.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 3] AND
MOTION FOR IMMEDIATE POSSESSION OF THE EASEMENTS [DKT. NO. 4]**

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order

to counsel of record.

DATED: March 2, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE